**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

ALVIN DEJUAN AIKENS                                                    PLAINTIFF
ADC #160951

v.                                      4:25-cv-00787-JM-JJV

JAMES SHIPMAN,
Warden, Larry B. Norris Unit,
Arkansas Division of Correction; *et al.*                           DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United

States District Judge James M. Moody Jr.  Any party may serve and file written objections to

this Recommendation.  Objections should be specific and include the factual or legal basis for

the objection.  If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.  Your objections must be received in the office of the

United States District Court Clerk no later than fourteen (14) days from the date of this

Recommendation.  Failure to file timely objections may result in a waiver of the right to appeal

questions of fact.

## I.      DISCUSSION

Plaintiff Alvin Dejuan Aikens is a prisoner in the Larry B. Norris Unit of the Arkansas

Division of Correction (ADC) who has filed a *pro se* Amended Complaint and Second Amended

Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants subjected him to inhumane

conditions of confinement while he was in punitive/restrictive housing.[1]   (Docs. 4, 9.)

Specifically, Plaintiff says: (1) Lieutenant Karma Thorns failed to provide him with sufficient

---

[1] The Court construed the Amended and Second Amended Complaint together.  (Doc. 10.)

bedding, a sanitary cell, and clean drinking water; and (2) Lieutenants Jordon Slayden and Brandon Bass denied him adequate out-of-cell time.  (*Id.*)  All other claims and Defendants were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A.  (Doc. 10.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to dismissal because Plaintiff failed to properly exhaust his available administrative remedies.  (Docs. 34-36.)  Plaintiff has filed a Response.  (Docs. 40-42.)  And Defendants have filed a Reply.  (Doc. 45.)  After careful consideration and for the following reasons, I recommend the Motion be GRANTED, Plaintiff's remaining claims be DISMISSED without prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial.  *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

2

## III.   DISCUSSION

### A.   Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).  Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218.  Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*  The only exception is if administrative remedies are unavailable.  42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies).  Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 643-44 (2016);

3

*see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

**B.      ADC's Grievance Procedure**

Administrative Directive 19-34 (AD 19-34) establishes a three-step procedure for exhausting administrative remedies in any ADC Unit.  (Doc. 34-2.)  A summary of that procedure is included in the Inmate Handbook, a full copy is available in the prison law library, and many of the requirements are included on the forms themselves.  (*Id.* at § IV(B)(4) and(C).)

First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident.  (*Id.* at § IV(E)(1)).  The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form."  (*Id.* at § IV(E)(2).) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties."  (*Id*. § IV(C)(4)).  And the grievance form reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days.  (*Id.* § IV(E)(11) and (F)(1).)  That grievance is included on the same form as the informal resolution.  Third, an inmate who is dissatisfied with the Warden's  response, or who does not timely receive a response, must appeal within five working days to the "Chief Deputy/Deputy/Assistant Director."  (*Id*. § IV(F)(9).)  And that response ends the grievance process.  (*Id*.)

C.    **Plaintiff's Grievances**

The Inmate Grievance Supervisor says in her sworn declaration that Plaintiff filed three relevant grievances.  (Doc. 34-1.)  In contrast, Plaintiff says in his unsworn Brief he filed "approximately seven grievances."  (Doc. 41 at 1.)  But he has not produced copies of the four additional grievances, provided their grievance numbers, clarified the dates they were filed, or presented any evidence substantiating his allegations.  Further, Defendants have provided a list of all grievances Plaintiff filed during the last ten years.  (Doc. 34-3.)  But Plaintiff has not pointed out which of those grievances he believes to be relevant to the issues raised in this lawsuit.  Accordingly, I conclude Plaintiff has not created a genuine issue of material fact here. *See Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of MN,* 109 F.4th 1033, 1038 (8th Cir. 2024) (to defeat summary judgment "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact").  I will now discuss whether the three provided grievances properly exhausted the claims raised in this lawsuit

1.    **MX-25-720**

On September 3, 2025, Plaintiff filed MX-25-720 saying he was not getting sufficient out- of-cell time.  (Doc. 34-5.)  But he did not receive a final ruling on the merits from the ADC Deputy Director until October 16, 2025, which was <u>after</u> he filed his Amended Complaint and Second Amended Complaint on August 29, 2025 and October 3, 2025, respectively.  (Docs. 4, 9, 34-5 at 3.)   "Under the plain language of section 1997e(a), an inmate must exhaust

administrative remedies before filing suit in federal court" and if "exhaustion was not completed at the time of filing, dismissal is mandatory." *See Johnson*, 340 F.3d at 627. Thus, I conclude this grievance did not properly exhaust any claims Plaintiff is raising in this lawsuit.

2.      MX-25-557

Sometime in July 2025, Plaintiff filed an informal resolution (also called Attachment I) saying Defendants Bass, Thorns, and Slayden failed to give him sufficient out-of-cell time. (Doc. 34-4.)  Pursuant to AD 19-34 § IV(E)(3) and (12), prison officials keep the original white and blue carbon copies of the informal resolution (Attachment I), while the inmates keep the pink and yellow carbon copies.  (Doc. 34-2 at 7, 9.)  Once the problem solver responds, the prisoner proceeds to step two by completing the grievance section on the same form.  At this point, the document  receives a grievance number.  *See* AD 19-34 § IV(F)(3) (Doc. 34-2 at 9).  Plaintiff says he did not receive a response to his informal resolution from the problem solver. (Doc. 41.)  So, on July 14, 2025, he proceeded to step two by filing a grievance to the Warden on his yellow carbon copy of the informal resolution (Attachment I), which is something AD 19-34 required him to do.

On July 14, 2025, a grievance official sent Plaintiff an Acknowledgement or Rejection (called Attachment II), saying the Warden would respond to grievance MX-25-557 by August 11, 2025.  (Doc. 34-4 at 4.)   But again Plaintiff did not receive a response by that date.  Thus, on August 12, 2025, Plaintiff filed an appeal to the ADC Deputy Director by completing the provided space on the bottom of the Acknowledgement or Rejection (Attachment II), as required by AD 19-34 § IV(F)(9).  (Doc. 34-2 at 11.)  The ADC Deputy Director rejected the appeal, without ruling on the merits, because Plaintiff did not include a copy of his informal resolution (Attachment I) as required by AD 19-34 § IV(G)(2).  (Doc. 34-2 at 12; Doc. 34-4 at 3.)  And I

note the bottom of the Acknowledgement or Rejection (Attachment II) reminded Plaintiff to do so.  (Doc. 34-4 at 4.)

In his unsworn Brief, Plaintiff explains he did not include the pink carbon copy of his informal resolution (Attachment I) with his appeal, which was the only copy he had left, because it was illegible.  (Doc. 41 at 6-7.)  However, Plaintiff has not provided the Court with any evidence, such as his pink carbon copy or an affidavit to support that assertion.  More importantly, Plaintiff could have attached the illegible pink carbon copy of Attachment I to his appeal and explained it was the only copy he had left.  But he did not do so.  Accordingly, I conclude this grievance, which could have been properly exhausted, did not satisfy Plaintiff's obligations under the PLRA. *See Woodford*, 548 U.S. at 90 (proper exhaustion means "using all steps that the agency holds out, and doing so properly"); *Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) (to properly exhaust, the prisoner must pursue the grievance to the final stage and obtain a ruling on the merits); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (same).

### 3.   MX-25-515

On June 17, 2025, Plaintiff filed an informal resolution saying:

> Since May 13, 2025, I, Alvin D. Aikens, has been illegally placed in Restrictive Housing by Lt. Jordon Slayden falsifying document.  Since I have been back here my 5th amendment due process has been violated. I have been denied my Legal mail/Notary one hour of recreation a day, and the right to have a clean living condition and clean my cell.  This is false imprisonment, cruelty and unusual punishment, and inhumane living conditions.  For every [day] my rights were violated I should be entitled to compensation. Let the camera footage and log in book reflect from when I was in West 5 cell to 8 bks 39 cell to East 16 cell will show clearly my rights have been violated. The only thing Larry B. Norris unit sert team and administration will offer you is a shower and your chow call.  I have been stuck inside a dirty cell for over 30 days.

(Doc. 34-6 at 1.) Plaintiff received an Acknowledgement or Rejection (Attachment II) saying the grievance was rejected as being "<u>either</u> non-grievable, untimely, duplicative, frivolous, <u>or</u>

vexatious," without clarifying which of those very different situations applied. (Doc. 34-6 at 4) (emphasis added.)  In their Brief, Defendants say this grievance was properly rejected because Plaintiff was attempting to appeal a disciplinary, which is a non-grievable matter.  (Doc. 36 at 5.)  But there is no evidence in the record to support that conclusion.  To the contrary, neither the ADC's internal notes for this grievance nor the Grievance Supervisor's declaration explain the specific reason why it was rejected or how that determination was correct.  (Doc. 34-1; Doc. 34-6 at 2.)  As a side note, I find it troubling that such a vague, non-precise explanation was given to Plaintiff as to why his grievance was rejected because without such information it is virtually impossible for a prisoner to challenge that decision on appeal.  And, it later makes judicial review by the Court speculative.  *See Porter v. Nussle,* 534 U.S. 516, 524-25  (one purpose of the PLRA's exhaustion requirement is to develop a clear administrative record for court review.)  Thus, in the future, I encourage ADC prison officials to provide more specific information as to why grievances or appeals are rejected.

Assuming his grievance was rejected as being untimely, Plaintiff appealed to the ADC Deputy Director by explaining why it was timely filed on the bottom of the Acknowledgement or Rejection (Attachment II).  (Doc. 34-6 at 4.)  The ADC Deputy Director rejected the appeal, without addressing the merits of his underlying claim or timeliness assertion, because Plaintiff failed to date it as required by AD 19-34 § IV(G)(2).  (Doc. 34-2 at 12; Doc. 34-6 at 2, 4-5.)

In his unsworn Brief, Plaintiff correctly points out that the Acknowledgement or Rejection (Attachment II) he completed did not contain a blank for writing the date and that the instructions on that form did not tell him to include it. (Docs. 34-6 at 4; Doc. 41 at 3-4.)   In contrast, AD 19-34 includes a different version of the Acknowledgment or Rejection (Attachment II) that includes blanks prompting inmates to provide their signature, ADC number,

and date.  (Doc. 34-2 at 21.)  Plaintiff reasons that if prison officials had provided him with the correct version of Acknowledgment or Rejection (Attachment II), he would have provided the date and that he should not be faulted for their failure to do so.  Plaintiff raises a fair point.

But, in their Reply, Defendants say: (1) Plaintiff had access to AD 19-34 at the prison library and in the Inmate Handbook, (2) AD 19-34 § IV(G)(2) says the inmate "must date, sign, and write the inmate's ADC number on the attachment being appealed," and (3) AD 19-34 does not require any particular version of the attachments or forms be used by prison officials.  (Doc. 45) (emphasis added.)  Defendants' argument prevails – *barely*.   Without a date, prison officials could not determine whether the appeal was timely filed. *See Prowse v. Washington*, 9 F.4th 836, 839 (8th Cir. 2021) (under the ADC's grievance procedure, it is the "order of submission, not receipt" that determines when an appeal is filed); *Henson v. Nunag*, No. 4:20-cv-1119-DPM-JJV, 2021 WL 1911064 (E.D. Ark. May 12, 2021) (grievance appeal was properly rejected because it did not include a signature or date as required by the ADC's grievance procedure). Plaintiff should have written the date on the bottom of the form he received as was required by the Administrative Directive. The fact that the form did not remind him to do so is not enough to deem administrative remedies technically, unavailable to him.  Accordingly, I conclude Defendants have chinned the bar on summary judgment because Plaintiff did not properly

exhaust his available administrative remedies against them.[2]

That being said, I remind Defendants that the purposes of the PLRA's exhaustion requirement are to give prison officials the first opportunity to address the <u>merits</u> of issues internally, possibly eliminating unnecessary litigation, and to provide a useful record should the matter proceed to court.  *Porter,* 534 U.S. at 524-25; *Johnson*, 340 F.3d at 626-27.  It is <u>not</u> intended to be a trap for the unwary or a tactical mechanism to keep claims out of court.  As it currently stands, AD 19-34 is a complex, thirty-one-page, single-spaced procedure that relies on antiquated measures such as triple carbon copies, vague descriptions of why grievances have been rejected, physical attachments that can be easily misplaced, appeals sent via traditional mail to ADC headquarters for final review, and at least seventy-six days to be completed <u>if</u> prison officials do not grant themselves extensions.  The prison grievance procedures cannot be "so opaque" that "no ordinary prisoner can discern or navigate it." *Ross*, 578 U.S. at 643-44.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.      Defendants' Motion for Summary Judgment (Doc. 34) be GRANTED, Plaintiff's remaining claims against Defendants Slayden, Bass, and Thorns be DISMISSED without prejudice, and this case be CLOSED.

---

[2] Plaintiff says he is entitled to have a jury decide exhaustion pursuant to *Perttu v. Richards*, 605 U.S. 460 (2025).  I am unpersuaded for two reasons.  First, unlike *Perttu*, the record before me does not create any genuine issues of material fact; instead, the questions presented are legal ones.  Second, in *Perttu*, the Supreme Court ruled a jury (rather than a judge after holding an evidentiary hearing) must resolve factual exhaustion issues only if those issues are "intertwined with the merits of the underlying suit." *Id.* at 464.  For instance, in *Perttu*, there was a  genuine issue of fact as to whether the defendant retaliated against the prisoner for reporting his sexual misconduct by destroying his grievances and threatening to kill him.  Here, the issue of whether Plaintiff properly exhausted his administrative remedies is not intertwined with the merits of his underlying conditions of confinement claims.

2.      The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from an Order adopting this Recommendation and the accompanying Judgment would

not be taken in good faith.

DATED this 10th day of March 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE